STATE OF NORTH CAROLINA v. JAMES EDWARD ALLEN

No. COA96-910

(Filed 5 August 1997)

## 1. Homicide § 370 (NCI4th)— second-degree murder—aiding and abetting—"friend exception"—sufficient evidence

There was sufficient evidence to support defendant's conviction of second-degree murder based upon aiding and abetting where the evidence at trial indicated that defendant was aware of the murderer's intent to kill the victim, defendant accompanied the murderer and other men as they took the victim to the murder scene in a van, and defendant was at the scene of the murder, standing and watching as the victim was shot. This evidence coupled with the evidence that defendant and the murderer were friends was sufficient, under the "friend exception," to support an inference that defendant, by his presence, had communicated that he was willing to assist in the crime if it became necessary.

## 2. Evidence and Witnesses § 875 (NCI4th)— misapplication of "state of mind" hearsay exception—prejudicial error

Testimony by a witness in a second-degree murder prosecution that her mother told her that defendant threatened by telephone to harm the witness if she came to court was hearsay and improperly admitted under the state of mind exception to the hearsay rule. Furthermore, the admission of the testimony was prejudicial error since the testimony could clearly have caused the jury to believe defendant was attempting to repress the witness's testimony of defendant's involvement in the crime and to disbelieve defendant's testimony that he was not present during the crime, and it cannot be said that there is no reasonable possibility that a different result would have been reached if the testimony had been excluded. N.C.G.S. § 8C-1, Rule 801(c).

On writ of *certiorari* from judgment entered 17 November 1994 by Judge Catherine C. Eagles in Forsyth County Superior Court. Heard in the Court of Appeals 30 April 1997.

*Attorney General Michael F. Easley, by Associate Attorney General Bruce S. Ambrose, for the State.*

*Lawrence J. Fine for defendant-appellant.*

MARTIN, John C., Judge.

Defendant was charged with the second degree murder of Louis Lopez. He entered a plea of not guilty and was tried jointly with a co-defendant, Christopher Mosby. Briefly summarized, the State's evidence at trial tended to show that on the evening of 20 January 1994, Louis Lopez, Christopher Mosby, Thomas Williams, David Wanner, Tammy Clowers, Pamela Lowery, and defendant were all present at defendant's apartment in Winston-Salem. Thomas Williams was cutting crack cocaine in defendant's kitchen. After Williams finished cutting the cocaine, he, Mosby, Lopez, and defendant went into a bedroom where Williams confronted Lopez about some "merchandise" being "messed up." There was evidence tending to show that Williams, Mosby, Wanner, and defendant escorted Lopez out of the apartment and into a van. Williams instructed Wanner to shut and lock the door to the vehicle so that Lopez could not get out. Williams drove the van, with defendant sitting in the right front seat and the other men in the back, to Washington Park. All five men got out of the van and, while defendant and Wanner stood next to the van, Williams and Mosby took Lopez to the edge of the woods. While Mosby held Lopez, Williams shot him in the head and in the chest. Williams and Mosby then carried his body deeper into the woods and returned to the van, where Williams threatened the other men if they said anything about the killing.

Defendant offered evidence tending to show that while they were at the apartment, Williams told defendant that he was going to kill Lopez because Lopez did not have some money that he was supposed to bring Williams. Defendant attempted to dissuade Williams, and thought he had been successful because Williams seemed to calm down and told defendant, "All right, . . . I'll be back. I'm fixing to drop him off." Williams, Mosby, Lopez, and a fourth man, Eugene Hairston, got their coats and left the apartment. Defendant, Wanner, Clowers, and Lowery stayed at the apartment, drinking beer. About twenty minutes later, Williams, Mosby, and Hairston returned to the apart-

ment; Lopez was not with them. Williams told defendant that he had killed Lopez. Defendant testified that he and Williams were close friends, that they confided in each other, and that Williams looked up to him.

Defendant's motion to dismiss made at the close of all the evidence was denied. The jury found defendant guilty of second degree murder and the trial court entered judgment upon the verdict and sentenced defendant to an active term of imprisonment for forty years. Defendant petitioned for a writ of *certiorari* to review his conviction which was allowed by this Court on 18 March 1996.

---

**[1]** By his first assignment of error, defendant contends the trial court erred by denying his motion to dismiss the charge of second degree murder. He contends there was insufficient evidence that he aided or abetted in the murder of Louis Lopez. We disagree.

In ruling upon a criminal defendant's motion to dismiss, the trial court must decide whether there is substantial evidence of each element of the offense charged. *State v. Jackson*, 74 N.C. App. 92, 327 S.E.2d 270 (1985). Substantial evidence is understood to mean evidence that is existing, not just seeming or imaginary. *State v. Smith*, 40 N.C. App. 72, 252 S.E.2d 535 (1979). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference of fact which may reasonably be deduced therefrom. *State v. Stanley*, 74 N.C. App. 178, 327 S.E.2d 902, *disc. review denied*, 314 N.C. 546, 335 S.E.2d 318 (1985). Contradictions or discrepancies in the evidence must be resolved by the jury and do not warrant dismissal of the charges. *State v. Earnhardt*, 307 N.C. 62, 296 S.E.2d 649 (1982). Defendant's evidence is not to be considered by the trial court, unless such evidence is favorable to the State. *State v. Bullard*, 312 N.C. 129, 322 S.E.2d 370 (1984).

In this case, defendant was convicted on the theory that he aided and abetted Williams in the murder of Lopez. "An aider or abettor is a person who is actually or constructively present at the scene of the crime and who aids, advises, counsels, instigates or encourages another to commit the offense." *State v. Barnette*, 304 N.C. 447, 458, 284 S.E.2d 298, 305 (1981). The defendant must be present at the scene of the crime with the intent to aid the perpetrator should his assistance become necessary and such intent must be communicated to the perpetrator. *State v. Burton*, 119 N.C. App. 625, 460 S.E.2d 181

(1995). Communication of intent to the perpetrator may be inferred from the defendant's actions and from his relation to the perpetrator. *Id.* A defendant's mere presence at the scene of the crime, even though he may silently approve of the criminal act and do nothing to prevent it, is not sufficient to make him guilty of the crime. *State v. Rankin*, 284 N.C. 219, 200 S.E.2d 182 (1973). However, presence alone may be sufficient when the bystander is a friend of the perpetrator and the perpetrator knows the friend's presence will be regarded as encouragement and protection. *State v. Cassell*, 24 N.C. App. 717, 212 S.E.2d 208, *cert. denied*, 287 N.C. 261, 214 S.E.2d 433 (1975), *citing State v. Hargett*, 255 N.C. 412, 121 S.E.2d 589 (1961).

Applying the foregoing principles to the evidence in the present case, we find no error in the trial court's denial of defendant's motion to dismiss. Viewed in the light most favorable to the State, there was evidence tending to show that defendant was aware of William's intent to kill Lopez and, with such knowledge, accompanied Williams and the other men as they took Lopez from the apartment to the van, and drove him to the place where he was killed. There was also evidence tending to show that defendant was present at the scene of the murder, standing next to the van with David Wanner, and that the two men watched as Thomas Williams shot Lopez. This evidence, considered together with the evidence of defendant's longstanding friendship with Mr. Williams, is sufficient, under the "friend exception," to support an inference that defendant, by his presence, communicated to Williams his intent to render aid in the commission of the crime should it become necessary. *See State v. Rankin, supra.* Therefore, the trial court properly dismissed defendant's motion to dismiss based on insufficiency of the evidence.

**[2]** By his next three assignments of error, defendant contends that he is entitled to a new trial by reason of the trial court's erroneous admission of hearsay testimony by Tammy Clowers regarding an alleged threat made by defendant to Ms. Clowers' mother over the telephone. During the State's redirect examination of Tammy Clowers, she testified that she had received threats. The following exchange took place:

Q. (by the prosecutor) Miss Clowers, who have you been receiving those threats from?

A. From what my mother said, it was James Allen.

Mr. Boyles: Objection.

**STATE v. ALLEN**

[127 N.C. App. 182 (1997)]

The Court:  Overruled.

Q. And what did your mother tell you about the threat that she—that she had received from James Allen and what was the nature of the threat?

Mr. Boyles: Objection.

The  Court: Overruled.

A:  That if I did come to court that I was gone.

The court instructed the jury that it could consider the testimony to assist it "in evaluating [Ms. Clowers'] credibility and her state of mind as she testifies here before you today," apparently holding the testimony admissible pursuant to the hearsay exception contained in N.C. Gen. Stat. § 8C-1, Rule 803(3).

Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c). Hearsay evidence is not admissible unless it is made so by a statutory hearsay exception. N.C. Gen. Stat. § 8C-1, Rule 802. Ms. Clowers' testimony concerning her mother's statement to her is clearly hearsay because its probative value, even for the limited purpose for which the trial court allowed it, is dependent upon the truth of the matter asserted, i.e., that defendant had threatened to harm Ms. Clowers if she testified. The trial court's admission of the hearsay testimony was a misapplication of the "state of mind" exception contained in Rule 803(3), which permits hearsay testimony to show the state of mind of the *declarant*, not the witness who testifies concerning the statement.

The erroneous admission of hearsay testimony is not always so prejudicial as to require a new trial, *State v. Ramey*, 318 N.C. 457, 349 S.E.2d 566 (1986), and the burden is on the defendant to show prejudice. N.C. Gen. Stat. § 15A-1443(a). Prejudicial error occurs when there is a reasonable possibility that, had the error not been committed, a different result would have been reached. *Id.*

In this case, the State presented evidence, including Ms. Clowers' testimony, that defendant left the apartment with Williams, Lopez, and the other men and was present when Lopez was killed; defendant testified that he remained at the apartment and was not involved in the killing. Ms. Clowers' inadmissible hearsay testimony concerning her mother's statement that defendant had threatened to harm her if

she came to court could clearly have caused the jury to believe that defendant was attempting to repress her testimony concerning his involvement in the crime, and to disbelieve defendant's own testimony that he was not present. Thus, we are unable to say that there is no reasonable possibility that a different verdict would have been reached had Ms. Clowers' hearsay testimony concerning the alleged threat been excluded. The error entitles defendant to a new trial.

New trial.

Judges COZORT and McGEE concur.

Judge Cozort concurred in this opinion on or before to 31 July 1997.