ELMORE, Judge.
On 15 April 2013, Harley David Hamlin (defendant) was indicted by a Transylvania County Grand Jury on one count of felony breaking or entering a place of worship (N.C.Gen.Stat. § 14-54.1 ) and one count of felony larceny after breaking and entering (N.C.Gen.Stat. § 14-72(b)(2) ). Defendant was also indicted for attaining the status of a habitual felon. Defendant's case came on for jury trial on 9 June 2014, during the Criminal Session of Transylvania County Superior Court, the Honorable William H. Coward presiding. The jury acquitted defendant of felony breaking and entering a place of worship, but found him guilty of felony larceny after breaking and entering. The jury also found that defendant had attained habitual felon status. The trial court sentenced defendant to an active term of 100 to 132 months imprisonment. Defendant appeals his convictions. After careful consideration, we conclude that defendant received a trial free from error.
I. Background
The State's evidence at trial tended to show the following: On the morning of 13 January 2013, Daniel Fulton (Mr. Fulton), an employee of the First United Methodist Church in Brevard, arrived at 6:35 a.m. to unlock the church. The church was undergoing renovations at this time. However, Mr. Fulton noticed that the door to the administrative office and pastor's office was damaged and ajar. Upon entering the administrative office, Mr. Fulton testified that it was in a state of "disorder," with drawers pulled open, materials scattered about the desk and floor, cabinets open, and a door panel lying on the floor. However, law enforcement was unable to discern where the perpetrator unlawfully entered the building and no fingerprints were found on-site.
The church's administrative assistant, Jamie Lancaster, testified that several gift cards for Ingles Market, a local grocery store chain (Ingles), and $25.00 in cash were missing from the cabinet in the main church office. The finance office kept a record of the gift cards stored in the cabinet, including their account/serial numbers and any receipts to show when funds were spent.
Detective Steven Douglas Woodson of the Brevard Police Department obtained the serial numbers for the missing Ingles gift cards. He then contacted the Ingles corporate office, provided the gift card account numbers, and learned that the missing cards had been used at Ingles' store # 177 in Hendersonville. Security footage from Ingles store # 177 showed a man using Ingles gift cards to purchase two $20.00 Visa gift cards. The serial numbers of the Ingles gift cards used to purchase the Visa gift cards matched the missing gift cards' serial numbers. Detective Woodson identified defendant in the security video based on his prior encounters with defendant.
Using the serial numbers of the missing gift cards, Detective Woodson performed a search of a national database of pawnbrokers. He was able to track the serial numbers for two of the missing gift cards to Hendersonville Pawn, LLC. Kevin Rhew, owner of the pawn shop, testified that he purchased two Ingles gift cards valued at $20.00 each from defendant on 13 January 2013. This transaction was documented on a pawn slip that showed the missing cards' last four digits, bore defendant's signature, and was dated 13 January 2013. Mr. Rhew testified that it was his usual practice to write a pawn ticket for every transaction.
Donald Howell (Mr. Howell), the director of security for Ingles' corporate office, testified for the State over defendant's objections. Mr. Howell testified that his position charged him with investigating crimes involving the improper use of gift cards. As such, Mr. Howell testified that each time a gift card is used, an electronic footprint is generated showing the date and time of use and its balance. Mr. Howell testified that the third-party provider, First Data, is responsible for storing the gift card balance information on its servers on behalf of Ingles. Ingles maintains ownership of the gift card numbers and the data. To Mr. Howell's knowledge, neither First Data nor Ingles had the ability to modify the data once it was stored on the server. However, certain Ingles employees had the ability to access the information at will.
The State entered into evidence a printout showing the allegedly stolen gift cards' serial numbers, date of most recent use, and balance as reflected by the data stored on First Data's server. This printout comprised the State's Exhibit 7 and was admitted into evidence by the trial court as a business record over defendant's hearsay objection.
II. Analysis
Defendant argues that the trial court erred in admitting the State's Exhibit 7 into evidence because the State failed to establish a proper foundation to support the admission of the printout under the business records exception to the hearsay rule. We disagree and hold that Exhibit 7 was properly admitted as a business record.
Hearsay is defined in the North Carolina Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen.Stat. § 8C-1, Rule 801(c) (2013). Although generally inadmissible at trial, hearsay may be allowed by statute or the North Carolina Rules of Evidence. N.C. Gen.Stat. § 8C-1, Rule 802 (2013). "The erroneous admission of hearsay testimony is not always so prejudicial as to require a new trial, and the burden is on the defendant to show prejudice. State v. Allen,127 N.C.App. 182, 186, 488 S.E.2d 294, 297 (1997) ; seeN.C. Gen.Stat. § 15A-1443(a). Prejudicial error occurs when there is a reasonable possibility that, had the error not been committed, a different result would have been reached. Id.
N.C. Gen.Stat. § 8C-1, Rule 803(6) establishes an exception to the general exclusion of hearsay for business records. A business record includes:
A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
N.C. Gen.Stat. § 8C-1, Rule 803(6) (2013). Our Supreme Court has held that business records stored on computers are admissible if they can be authenticated as follows:
(1) the computerized entries were made in the regular course of business, (2) at or near the time of the transaction involved, and (3) a proper foundation for such evidence is laid by testimony of a witness who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy.
State v. Crawley,217 N.C.App. 509, 516, 719 S.E.2d 632, 637 (2011) (quoting State v. Springer,283 N.C. 627, 636, 197 S.E.2d 530, 536 (1973) ). "The authenticity of [business] records may, however, be established by circumstantial evidence.... There is no requirement that the records be authenticated by the person who made them." State v. Wilson,313 N.C. 516, 533, 330 S.E.2d 450, 462 (1985) (citations omitted). The business records exception recognizes the "impossibility of producing in court all the persons who observed, reported and recorded each individual transaction [.]" Springer,283 N.C. at 634, 197 S.E.2d at 535.
Here, defendant does not claim that the State failed to satisfy the first two requirements for the authentication of business records stored on computers. Instead, defendant argues that the State failed to lay a proper foundation for admissibility of the printout. Defendant contends that the State was required to produce testimony from someone with knowledge about whether First Data maintained its system such that it produced reliable results. Defendant specifically argues, "Mr. Howell did not provide any information on [ ] how often First Data maintained or serviced its servers to ensure the reliability of the data collected."
In advancing this argument, defendant relies, in part, on State v. Agudelo,where this Court held that the telephone records of a Ramada Inn were inadmissible as a business record because the recording machine's accuracy could not be verified given that there was no record of when the machine was last checked for maintenance. 89 N.C.App. 640, 645, 366 S.E.2d 921, 924 (1988)overruled on other grounds by State v. Barnes,324 N.C. 539, 380 S.E.2d 118 (1989).
Initially, we note that Agudelois most certainly distinguishable from the instant case, particularly given that it was decided in 1988 and involved a question of trustworthiness regarding the admission of telephone records recorded by an answering machine. Id.It is now 2015, and the trustworthiness of the evidence we are evaluating was electronically generated and stored on a secure server.
At trial, the State entered into evidence printouts of electronic records that evidenced the stolen gift cards' serial numbers, a timestamp, and the card balances. Donald Howell, the Director of Security for Ingles introduced the printouts. Mr. Howell testified as to the electronic system employed to maintain this information. Specifically, Mr. Howell testified that Ingles maintained ownership of and access to the electronic records, but it utilized the third-party server company First Data to store this information on a secure server. Mr. Howell testified that he had computer access to First Data's information. Further, he testified that based on a gift card's serial number, he could tell where a gift card was purchased and the day and time on which it had been used. He testified that Exhibit 7 consisted of a printout of a screenshot showing First Data's record of the missing gift cards usage history and card balances. Mr. Howell also testified that, on a limited basis, Ingles' employees had access to First Data's electronic records, but he stated he was unaware of a way that he or other employees could manipulate the electronic data.
Regardless of the fact the Mr. Howell did not generate the electronic data himself by entering it into the computer or otherwise demonstrate extensive knowledge of First Data's server maintenance history, he sufficiently demonstrated his understanding of the computer system, the method by which the data was gathered and transmitted, and the business record that was submitted into evidence. Accordingly, we hold that Mr. Howell's testimony provided a sufficient foundation for the admission of the computer printouts as a business record. State v. Hall,220 N.C.App. 417, 725 S.E .2d 474 (2012)[1] (holding that while the witness "did not program the computers or enter the data into the computer himself, he demonstrated his knowledge of the computer system, the business records and the method by which the data was gathered and the records created .... [his] testimony provided a sufficient foundation for the admission of the computer printouts as business records"). Further, even assuming arguendothat the printouts were not admissible under any recognized hearsay exception, we conclude the admission of those statements was harmless error. Given the overwhelming evidence against defendant, there is no reasonable possibility that, had the error not been committed, a different result would have been reached.
In sum, we conclude that defendant received a trial free from error.
No error.
Judges CALABRIA and DILLON concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from judgment entered 11 June 2014 by Judge William H. Coward in Transylvania County Superior Court. Heard in the Court of Appeals 7 May 2015.

We recognize that this case is unpublished and is not binding; however, this Court's holding is relevant to the case at bar.